# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Georgina Stephens and Larry Alexander,
a married couple,

      Plaintiffs,

v.

Federal National Mortgage Association,
a federally chartered corporation, all
unknown successors, and all other persons
unknown claiming any right, title, interest
or lien in the real estate described in the
complaint herein and John and Jane Doe,

      Defendants.

**Case No. 12-cv-2453 (JRT/SER)**

**REPORT AND
RECOMMENDATION**

---

    Georgina Stephens, *pro se*, and Larry Alexander, *pro se*, P.O. Box 381873, Germantown, Tennessee 38183.

    Kendall L. Bader, Esq., Barnes & Thornburg LLP, 225 South Sixth Street, Suite 2800, Minneapolis, Minnesota 55402 for Defendant Federal National Mortgage Association.

---

STEVEN E. RAU, United States Magistrate Judge

    This matter came before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Order of Reference dated Mar. 7, 2013) [Doc. No 18]. Defendant Federal National Mortgage Association ("Fannie Mae") filed a Motion to Dismiss on March 6, 2013. (Def. Fed. Nat'l Mortg. Ass'n's Mot. to Dismiss, "Mot.") [Doc. No. 13]. Plaintiffs Georgina Stephens ("Stephens") and Larry Alexander ("Alexander") (collectively, "Plaintiffs") responsive filings were not considered due to their late submission.[1] *See* (Pls.' Resp. to Mot. to

---

[1]     Although Plaintiffs are *pro se*, Alexander admitted during oral argument that he has training as a lawyer. Additionally, Plaintiffs have been frequent litigants in this District for the past 25 years, both in a *pro se* capacity and as represented by counsel. Plaintiffs' litigation history in this District is so fraught with "an endless flow of frivolous and abusive filings" that

Dismiss Compl., "Pls.' Resp.") [Doc. No 22]; (Aff. of Georgina Stephens, "Stephens Aff.") [Doc. No. 23]; (Aff. of Larry Alexander, "Alexander Aff.") [Doc. No. 24].  For the reasons set forth below, the Court recommends that Fannie Mae's Motion to Dismiss be granted.

## I.     BACKGROUND

### A.     Factual Background

When considering a motion to dismiss, the Court must take well-pleaded material facts in the complaint as true.  *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007).  In addition, the  Court "may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint."  *Id.*  For this reason, the Court supplements the facts provided in the Complaint with matters of public record.  Fannie Mae provided some of the documents to the Court as exhibits.  For ease of reference, this Report

---

they are both prohibited from filing anything related to their 875 Laurel Avenue property, the bankruptcies of each Plaintiff, and the related adversary proceeding.  *See* Mem. Op. & Order dated Sept. 27, 2007, No. 06-cv-693 (PJS) [Doc. No. 16 at 13–16]; Mem. Op. & Order dated Sept. 27, 2007, No. 06-cv-2327 (PJS) [Doc. No. 10 at 13–16] (the same order was filed in both of the cited cases).  That order also described nine years of "a torrent of lawsuits" filed by Plaintiffs.  *See generally id.*  Exclusive of the cases discussed in Judge Schiltz's order, Plaintiffs are also parties to the following non-exhaustive list of cases filed since 2000: *Alexander v. Jensen-Carter*, 711 F.3d 905 (8th Cir. 2013) (Stephens as bankruptcy appellant represented by counsel); *Alexander v. DiamlerChrysler Servs. N.A., LLC*, No. 05-1004 (8th Cir. Apr. 3, 2006) (Alexander as plaintiff-appellant represented by counsel); *In re Stephens*, Nos. 12-cv-1423 (JRT), 12-cv-1424 (JRT), 2013 WL 950822 (D. Minn. Mar. 12, 2013) (Stephens and Alexander as bankruptcy appellants represented by counsel); *Stephens v. Fed. Nat'l Mortg. Ass'n*, 12-cv-2001 (ADM/JJG) (both Stephens and Alexander as *pro se* plaintiffs and related to the instant case as described below); *Stephens v. Spence*, 00-cv-2359 (RHK/JMM) (Stephens as plaintiff represented by counsel); *Stephens v. Chrysler Fin.*, 00-cv-1329 (PAM/JGL) (Stephens as plaintiff represented by counsel).  In particular, Plaintiffs' timeliness has been at issue in at least the following cases: Order dated Aug. 7, 2012 at 1, *Alexander v. Jensen-Carter*, 711 N F.3d 905 (8th Cir. 2013) (order issued seven days after appellants (Plaintiffs in the instant case) failed to file their brief, requiring appellants to show cause why appeal should not be dismissed for failure to prosecute); Mem. Op. & Order dated Aug. 16, 2012, *Stephens v. Hedback*, No. 12-cv-1423 (JRT) [Doc. No. 15 at 2, 4]; Mem. Op. & Order dated Aug. 16, 2012, *Alexander v. Jensen-Carter*, No. 12-cv-1424 [Doc. No. 11 at 2, 4] (the same order was entered both 12-cv-1423 and 12-cv-1424 denying the motion to withdraw reference from the Bankruptcy Court, filed by Stephens, Alexander, and another movant, because the motion was untimely).

and Recommendation ("R&R") will cite directly to the public record instead of to Fannie Mae's exhibits when possible.

Plaintiffs are married and Minnesota citizens. (Compl., Ex. A., Attached to Notice of Removal, "Compl.") [Doc. No. 1 at Caption, ¶ 1]. They allege that they are the owners of 224 North Avon Street, St. Paul, Minnesota 55104 (the "Property"), and that the Property is their principal residence. (Compl. ¶¶ 4–6). But public records show that the Property is classified as "residential, non-homestead." Tax & Prop. Look Up Info.—Quick Info, Ramsey County Tax & Property Info., http://rrinfo.co.ramsey.mn.us/public/characteristic/Parcel.aspx?scrn=Quick&pin= 022823120011&cnt=0 (last visited June 17, 2013).

A mortgagee's interest in favor of Mortgage Electronic Registration Systems, Inc., dated February 8, 2007, encumbering the Property was recorded in Ramsey County, Minnesota, on February 16, 2007. (Compl. ¶ 8); *see also* (Mortgage, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 1–20].[2]

In 2011, the City of St. Paul determined the Property was unfit for human habitation and ordered the Property vacated no later than May 2, 2011. *See* Notice of Condemnation as Unfit for Human Habitation & Order to Vacate (the "Condemnation Order"), City of St. Paul, Apr. 29, 2011, submitted with Application for Appeal at 2–4, City of St. Paul at 2, May 2, 2011, *available at* http://stpaul.legistar.com/View.ashx?M=F&ID=1343342&GUID=BA9875BA-CADD-483F-BD65-95D181DC321B. Alexander appealed the decision and participated in the subsequent Legislative Hearing on May 3, 2011. *Id.*; Mins. – Final, Legislative Hr'g at 8–10, City of St. Paul, May 3, 2011, *available at* http://stpaul.legistar.com/View.ashx?M=M&ID=

---

[2]    Because the Exhibits attached to Kendall Bader's Declaration are not labeled or otherwise identified, the Court refers to the document number and pages assigned by the CM/ECF system (i.e., [Doc. No. 16-1 at 1–20]) for ease of reference.

144833&GUID=5D92E23F-6C21-49F6-8344-F156B3F53D8B.    The Legislative Hearing
Officer ("LHO") stated that "[s]he does not trust that this is an owner-occupied unit" and ordered
the property vacated and empty by close of business May 4. *Id.* A letter sent to Alexander at the
Property and at 875 Laurel Avenue, an address Alexander also uses, confirmed the LHO's
decision. Letter from Mia Van, Legislative Hr'g Coordinator, City of St. Paul, Office of the City
Council, to Larry Alexander (May 5, 2011), *available at* http://stpaul.legistar.
com/View.ashx?M=F&ID=2132910&GUID=EB7E273B-EA75-4DAA-9695-1EF20BEE245F.
Alexander appealed to the St. Paul City Council (the "City Council") and appeared at the May 18
meeting. *See* Mins. – Final at 18, City Council of St. Paul, City Council, May 18, 2011,
*available at* http://stpaul.legistar.com/View.ashx?M=M&ID=147181&GUID=BFF3DAA0-
CDC5-41DD-9DCB-B06493E6E520.  The City Council adopted the LHO's recommendation
and ordered immediate vacation. *Id.* at 19. During the City Council meeting, Alexander said the
property was vacant. *Id.*[3]

Alexander then filed a lawsuit in Ramsey County in an attempt to nullify the
Condemnation Order and award damages. *See Alexander v. City of Saint Paul*, No. 62-CV-11-
5136 (Minn. Dist. Ct.).   Judge Elena L. Ostby ultimately dismissed the case for lack of
jurisdiction and said that obtaining a writ of certiorari to the Minnesota Court of Appeals was the
appropriate remedy to challenge the City Council's determination.  *See* Findings of Fact,
Conclusions of Law, Order Dismissing the Action at 10 (the "Condemnation Action Dismissal"),
*Alexander v. City of St. Paul*, No. 62-CV-11-5136 (Minn. Dist. Ct. Nov. 3, 2011).  Judge Ostby

---

[3]    The City Council Minutes note that "Larry Alexander" appeared, but later refer to "Mr.
Anderson." *Id.* at 18–19. Because the only other "Anderson" that appears in the Minutes is
clearly not a relevant party to the Property issue, the Court assumes that the Minutes are
mistyped and that the "Mr. Anderson" referred to on page 19 refers to Plaintiff Larry Alexander.
*See id.* at 7 (discussing an anecdote shared by Rossie Anderson Howse about a shooting).

also found that Alexander abided by the order to vacate the property no later than May 2, 2011, and that the City Council denied Alexander's appeal of the Condemnation Order, and that the Property remained under the Condemnation Order. *Id.* at 5, 7. During oral argument for this Motion, Alexander admitted that he did not appeal Judge Ostby's order.

The mortgage was assigned to CitiMortgage, Inc. (the "Foreclosing Party"), on June 28, 2011. (Compl. ¶ 9); *see also* (Assignment of Mortgage, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 21]. The Foreclosing Party recorded its intent to foreclose on October 27, 2011. (Notice of Pendency of Proceeding & Power of Attorney to Foreclose Mortg. by Corp., Attached to the Decl. of Kendall Bader, "Notice of Pendency") [Doc. No. 16-1 at 34–35].

Plaintiffs allege the Foreclosing Party "attempted" to foreclose by advertisement on the Property. (Compl. ¶ 10). The sheriff's sale was originally scheduled for December 29, 2011, but was postponed. *See* (Compl. ¶ 11); (Sheriff's Certificate of Sale & Foreclosure Record, Attached to the Decl. of Kendall Bader, "Sheriff's Certificate") [Doc. No. 16-2 at 2–3]. The sale occurred on January 23, 2012, and the resulting certificate of sale and foreclosure record was recorded with Ramsey County on January 26, 2012. (Compl. ¶ 11); (Sheriff's Certificate) [Doc. No. 16-2 at 1–17]. An assignment from the Foreclosing Party to Fannie Mae provided that agency an interest in the Property. (Compl. ¶ 12); (Assignment of Sheriff's Certificate of Sale, Attached to the Decl. of Kendall Bader) [Doc. No. 16-2 at 18]. Fannie Mae recorded that interest with Ramsey County on April 26, 2012. (*Id.*) At some point, Re/Max Results ("Re/Max"), as an agent of Fannie Mae, entered the Property and changed the locks. (Compl. ¶¶ 40–43).

### B. Procedural Background

In August 2012, Plaintiffs filed a *pro se* complaint in this District, alleging Fannie Mae, its successors, and several fictitious defendants violated various Minnesota state laws governing mortgage foreclosure proceedings. Compl., *Stephens v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-2001 (ADM/JJG) [Doc. No. 1]. Along with their federal complaint, Plaintiffs filed an application for leave to proceed *in forma pauperis*. Appl. to Proceed in District Ct. Without Prepaying Fees or Costs ("IFP Application"), *Stephens v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-2001 (ADM/JJG) [Doc. No. 2]. Magistrate Judge Jeanne J. Graham denied Plaintiffs' IFP Application on August 16, 2012, but granted them an opportunity to pay the normal $350.00 filing fee and proceed with their case if they chose to do so. (Order on Appl. for Leave to Proceed *In Forma Pauperis*, *Stephens v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-2001 (ADM/JJG) [Doc. No. 3 at 2]. On August 30, 2012, Plaintiffs filed a Notice of Motion and Motion to Dismiss, stating "Plaintiffs acknowledge that this Complaint has only state law claims and voluntarily moves [sic] for dismissal without prejudice, so that this action can proceed in Minnesota state court. Notice of Mot. & Mot. to Dismiss, *Stephens v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-2001 (ADM/JJG) [Doc. No. 4 at 1].

On August 28, 2012, Plaintiffs re-filed the same lawsuit in Ramsey County, Minnesota. *Compare* Compl., *Alexander v. Fed. Nat'l Mortg. Ass'n et al*, No. 62-cv-12-6797 (Minn. Dist. Ct.), *with* Compl. *Stephens v. Fed. Nat'l Mortg. Ass'n*, No. 12-cv-2001 (ADM/JJG) [Doc. No. 1].

On September 24, 2012, Fannie Mae filed its timely Notice of Removal in this Court. (Notice of Removal) [Doc. No. 1]. Fannie Mae alleged that the District of Minnesota had jurisdiction on the basis of diversity of citizenship and that the amount in controversy was more than $75,000. (*Id.* at 3–4); *see also* 28 U.S.C. § 1441.

Plaintiffs moved to remand this case to Ramsey County and amend the Complaint on October 4, 2012. (Pls.' Mot. to Remand & Amend Compl.) [Doc. No. 2]. That motion also sought to add Re/Max and North Metro Real Estate Inc. as defendants. (Mot. to Remand & Amend Compl. at 9). Plaintiffs did not appear at the hearing. (Min. Entry dated Jan. 23, 2013) [Doc. No. 10]. This Court recommended that Plaintiffs' Motion to Remand and Amend the Complaint be denied, and Judge John R. Tunheim adopted the Report and Recommendation in its entirety. (Report & Recommendation dated Jan. 28, 2013) [Doc. No. 11]; (Order Adopting Report & Recommendation dated Feb. 22, 2013) [Doc. No. 12].

On March 6, 2013, Fannie Mae filed the instant Motion to Dismiss. (Mot.) Plaintiffs filed an untimely response and two supporting affidavits on April 15, 2012. (Pls.' Resp.); (Stephens Aff.); (Alexander Aff.). Four days later, Plaintiffs filed a supplemental response. (Pls.' Supplemental Resp. to Mot. to Dismiss Compl., "Suppl. Resp.") [Doc. No. 29]. Defendants filed a Reply on April 22. (Def. Fed. Nat'l Mortg. Ass'n's Reply in Supp. of Its Mot. to Dismiss, "Reply") [Doc. No. 26].[4]

Counsel for Fannie Mae and Alexander, on behalf of himself and Georgina Stephens, were present at the hearing. (Min. Entry dated Apr. 23, 2013) [Doc No. 30]. Although the Court advised Alexander that it would not consider Plaintiffs' untimely responsive pleadings, Alexander was allowed to make a brief oral argument.

---

[4]     As stated above, the Court will not consider Plaintiffs' Response because it was untimely, and will not consider Plaintiffs' Supplemental Response because it was not permitted under the Local Rules. *See* L.R. 7.1(g), (i). Although Fannie Mae could not have known how the Court would treat Plaintiffs' filings, the Court will likewise not consider Fannie Mae's reply because it replies to Plaintiffs' Response. *See* L.R. 7.1(c)(3)(B).

## II.    DISCUSSION

### A.    Applicable Standard

When parties submit matters outside the pleadings for consideration in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the motion must be considered a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (citations omitted).  "Matters outside the pleadings" include "statements of counsel at oral argument raising new facts not alleged in the pleadings . . . and any written or oral evidence in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (internal quotations and citations omitted).  "[B]ut [a court] may consider some materials that are part of the public record . . . as well as materials that are necessarily embraced by the pleadings[]" when considering Rule 12(b)(6) motion.    *Miller v. Redwood Toxicology Labs., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (internal quotations and citations omitted); *see also Haubrich v. U.S. Bank Nat'l Ass'n*, No. 12-cv-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012) (considering "the notes, mortgages, assignments[,] and other foreclosure-related documents as they are necessarily embraced by the pleadings and most are public records" in a mortgage-foreclosure dispute). The court has "complete discretion" in deciding whether to accept material beyond the pleadings that is offered in support of a Rule 12(b)(6) motion.  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003) (citation omitted).

Fannie Mae's motion and accompanying memorandum relies on the declaration of its attorney, Kendall Bader, and several exhibits attached to the declaration.  *See* (Decl. of Kendall Bader) [Doc. No. 16].  Many of these exhibits are matters of public record because they were

filed with the Ramsey County Office of the Registrar or are otherwise publically available.[5]  The one exhibit that is not a matter of public record was not used for this R&R.  *See* (Letter from Steven H. Burns, Peterson, Fram & Bergman, P.A., to Georgina Y. Stephens and Larry Alexander, Mar. 4, 2011, Attached to Decl. of Kendall Bader, "Burns Letter") [Doc. No. 16-2 at 37–39].  For these reasons, Fannie Mae's Motion is considered properly under the Rule 12(b)(6) standard.

### B.     Review Under Federal Rule of Civil Procedure 12(b)(6)

Fannie Mae moves this Court to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); (Mot. at 1); (Def. Fed. Nat'l Mortg. Ass'n's Mem. of Law in Supp. of Its Mot. to Dismiss, "Mem.") [Doc. No. 15 at 5].  Specifically, Fannie Mae asserts that Plaintiffs' Claims I, II, III, and V must be dismissed with prejudice because they do not allege any wrongdoing by Fannie Mae, and even if they did, each of these claims fails as a matter of law.  (*Id.* at 7).  Fannie Mae further asserts that Count IV must be dismissed because Fannie Mae's agent was statutorily authorized to enter and secure the Property.  (*Id.* at 13–14).

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on

---

[5]     *See* (Mortgage, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 1–20]; (Assignment of Mortgage, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 21]; (Tax & Prop. Look Up Info., Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 22–23]; (224 Avon St. N.—Property Info., Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 24–27]; (Vacant Building List, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 28–32]; (2012 Property Tax Statement, Attached to the Decl. of Kendall Bader) [Doc. No. 16-1 at 33]; (Notice of Pendency) [Doc. No. 16-1 at 34–35]; (Sheriff's Certificate) [Doc. No. 16-2 at 1–17]; (Assignment of Sheriff's Certificate of Sale) [Doc. No. 16-2 at 18–19]; (St. Paul Legislative Code, Chapter 43—Vacant Buildings, Attached to the Dec. of Kendall Bader) [Doc. No. 16-2 at 20–29]; (STAMP—Activity Detail, Attached to the Dec. of Kendall Bader) [Doc. No. 16-2 at 30–36].

its face." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted)).  A court accepts the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party."  *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012).  Legal conclusions "must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

## C.    Claims I, II, and III

Plaintiffs make several claims that allege that the foreclosure process was not followed correctly.  Specifically, Plaintiffs allege that the Foreclosing Party failed to serve them with the notice of sale, failed to serve them with a pre-foreclosure counseling notice, and did not properly publish the Notice of Postponement of Mortgage Foreclosure Sale or serve Plaintiffs with that Notice.  (Compl. ¶¶ 15–38).  The Court addresses each claim in turn.

### 1.    Claim I

Plaintiffs claim the Foreclosing Party failed to serve notice of the sale on the Plaintiffs as Minnesota Statute section 580.03 requires.  (Compl. ¶¶ 15–21) (citing Minn. Stat. § 580.03; Minn. R. Civ. P. 4.03(a)).  The pertinent part of section 580.03 provides

> [s]ix weeks' published notice shall be given that such mortgage will be foreclosed by sale of the mortgaged premises or some part thereof, and at least four weeks before the appointed time of sale a copy of such notice shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises, if the same are actually occupied.

Fannie Mae argues service was not necessary because the Property was not occupied for the purposes of the foreclosure statutes, and because service was attempted and the Property appeared unoccupied.  (Mem. at 7–10).

Minnesota considers actual occupancy to mean "open, visible occupancy." *Pipkorn v. Dunn*, 408 N.W.2d 705, 707 (Minn. Ct. App. 1987) (quoting *Cutting v. Patterson*, 82 Minn. 375, 380, 85 N.W. 172, 173 (1901)). For the reasons that follow, the Court finds that the Property was not actually occupied.

According to public records, the City of St. Paul lists the Property as a "Vacant Building Category 2." 224 Avon St. N.—Property Info., City of St. Paul, https://www.stpaulonestop. com/AMANDA5/eNtraprise/StPaul/m3list/a_PickProperty.jsp?lid=ReadOnlystpaul (enter house number "224" and street name "Avon St. N."; click "submit") (last visited June 18, 2013). St. Paul City Ordinances describe a Category II building as one that is: (1) unoccupied and condemned, (2) unoccupied and has multiple housing or building code violations, or (3) condemned and illegally occupied. *See* St. Paul, Minn. Ordinances § 42.02(7)(d)–(f). City of St. Paul records reflect that the Property has been vacant since May 6, 2011. Vacant Building List, City of St. Paul, www.stpaul.gov/index.aspx?nid=2272 (choose "By Category Type" in the "View" drop-down menu and choose "Category 2" in the "Select Category" drop down menu; results are listed alphabetically by street name) (last visited June 18, 2013). Therefore, the public record reflects that when the Foreclosing Party filed the Notice of Pendency in October 2011, the Property was vacant and unoccupied. For this reason, the requirement to serve the notice of sale did not apply to the Property or Plaintiffs.

Additionally, the Sheriff's Certificate serves as prima facie evidence that the Foreclosing Party complied with all legal requirements.

> Every sheriff's certificate of sale made under a power to sell contained in a mortgage shall be prima facie evidence that all the requirements of law in that behalf have been complied with, and prima facie evidence of title in fee thereunder in the purchaser at such sale, the purchaser's heirs or assigns, after the time for redemption therefrom has expired.

11

Minn. Stat. § 580.19. Plaintiffs make no allegation that the Foreclosing Party did not have the power to sell the property. Instead, they allege the foreclosing procedures were not followed and that the Property is their principal place of residence. (Compl. ¶¶ 5, 13–14). But by recording the Sheriff's Certificate, the Foreclosing Party made a prima facie showing that the sale was proper. Nothing in the public record or Plaintiffs' Complaint alleges any facts rebutting the prima facie evidence.[6] *See Pliam v. Cendant Mortg. Corp.*, No. 11-cv-3720 (RHK/JSM), 2012 WL 1439035, at *45 (D. Minn. Apr. 26, 2012) (recommending dismissal and stating that "[b]ald allegations . . . are insufficient to rebut the presumption of accuracy given to a sheriff's certificate" and "[e]ven at the pleading stage, a plaintiff must proffer more than speculation to overcome this presumption[]" (citing *Bazil v. Wells Fargo Bank, N.A.*, 11-cv-1206 (SRN/LIB), 2011 WL 4442835, at *5 (D. Minn. Sept. 22, 2011)).

Finally, even though the Court finds service was not required, the public record reflects the Foreclosing Party's attempt to perfect service at the Property supports the Court's finding that the Property was vacant and unoccupied. The process server stated that on that day "and for sometime [sic] prior thereto, said premises were and have been vacant and unoccupied." (Aff. of Vacancy, Attached to the Sheriff's Certificate) [Doc. No. 16-2 at 4] (stating that Karl Neher attempted service of the following documents: Notice of Mortgage Foreclosure Sale; Homestead

---

[6]    Even if Plaintiffs' Response had been filed on time, it is not persuasive. Plaintiffs again state that the Property is "owner-occupied." (Pls.' Resp. at 2). Plaintiffs claim the confusion is attributable to the administrative hearings regarding the Condemnation Order. (*Id.* at 11–13). Plaintiffs claim a stay was issued and Alexander filed a civil action in state court, and for these reasons, "the vacate order is not probative of any fact." (*Id.* at 11–12). But Plaintiffs assertions are again refuted by public record. The judge's findings in the Condemnation Action Dismissal state that "Alexander and the tenant abided by the [Condemnation O]rder and vacated the property." Condemnation Action Dismissal at 5. Plaintiffs only provide self-serving affidavits to the contrary. (Stephens Aff.; Alexander Aff.). Even if the Court converted Fannie Mae's Motion to Dismiss into a motion for summary judgment, self-serving affidavits are not sufficient to defeat a motion for summary judgment. *Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006).

Designation Notice; Help for Homeowners in Foreclosure Notice; Notice of Redemption Rights; and Foreclosure Advice to Tenants Notice).

Thus, the Court finds the Foreclosing Party was not required to serve Plaintiffs or the occupants of the Property because the property was unoccupied.[7] The Court finds the Foreclosing Party strictly complied with § 580.03, and Plaintiffs failed to state a claim upon which relief can be granted under that statute. The Court recommends dismissal of Claim I.

### 2. Claim II

Plaintiffs allege the Foreclosing Party failed to strictly comply with Minnesota Statute section 580.021, subdivision 2 because it failed to serve Plaintiffs with a pre-foreclosure counseling notice (the "Counseling Notice"). (Compl. ¶¶ 22–29). Section 580.021 requires a foreclosing party to provide the mortgagor with notice of an opportunity for counseling before the notice of pendency is recorded. § 580.021, subdiv. 2. The Counseling Notice must contain information stating that "(1) foreclosure prevention counseling services provided by an authorized foreclosure prevention counseling agency are available; and (2) the party will transmit the homeowner's name, address, and telephone number to an approved foreclosure prevention agency." *Id*. This requirement applies to "property consisting of one to four family dwelling units" where the owner occupies one of the units as the owner's principal place of residence. § 580.021, subdiv. 1. Plaintiffs allege that the Foreclosing Party attempted to serve Plaintiffs

---

[7] The Complaint does not dispute that Fannie Mae complied with the statutorily required six weeks of published notice of the sale. Plaintiffs' Response likewise does not dispute that Fannie Mae advertised the notice of sale for six weeks. *See* Minn. Stat. § 580.03; (Pls.' Resp. at 3) ("On November 3, 2011, [the Foreclosing Party] published the first of six consecutive weeks of Notice of Sheriff's Sale, scheduled for Thursday, December 29, 2011[,] at 10 a.m."). Public records show the St. Paul Legal Ledger printed and published the Mortgage Foreclosure Sale of the Property on November 3, 10, 17, 25, and December 1 and 8, which represents six weeks of publication. *See* (Aff. of Publ'n dated Dec. 8, 2011, Attached to the Sheriff's Certificate) [Doc. No. 16-2 at 3].

with the Counseling Notice on November 12, 2011, which is after the Foreclosing Party recorded the Notice of Pendency in October. (Compl. ¶¶ 24–25).

Fannie Mae argues Plaintiffs could not have occupied the Property legally as their principal place of residence at the time the Notice of Pendency was recorded in October 2011 because of the Condemnation Order. (Mem. at 11). Fannie Mae claims that for this reason, the Foreclosing Party was not required to serve the notices section 580.021 requires and this claim should be dismissed.

As discussed in connection with Claim I above, the Court agrees that Plaintiffs did not legally occupy the Property as their residence in October 2011. Judge Ostby determined Alexander complied with the order to vacate the property no later than May 2, 2011. *See* Condemnation Action Dismissal at 7.[8] Because Plaintiffs did not legally occupy the Property, section 580.021 did not require the Foreclosing Party to provide Plaintiffs with the Counseling Notice.

---

[8]     In their untimely and unallowable Supplemental Response, Plaintiffs claim that Alexander's appeal of the Condemnation Order created a stay, and thus occupancy was not prohibited. (Suppl. Resp. at 16–17). This argument, even if considered, is not persuasive because it directly contradicts Judge Ostby's findings that Alexander abided by the Condemnation Order's requirement to vacate the Property no later than May 2, 2011, and that the Property remained under the Condemnation Order at the time of her November 2011 order. Alexander did not appeal Judge Ostby's order. Condemnation Action Dismissal at 5, 7. This Court gives Judge Ostby's order "the same full faith and credit" it would receive in Minnesota state court and will not allow Plaintiffs to relitigate the issues Judge Ostby already decided. *See* 28 U.S.C. § 1738; *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (stating that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case"); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996) (stating that  parties' previous full and fair opportunity to litigate "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication") (internal quotations and citations omitted).

Plaintiffs' Complaint consistently uses the term "serve" in its discussion of the Counseling Notice.[9] But section 580.021 requires that the Foreclosing Party *provide* the Counseling Notice, not *serve* the Counseling Notice. § 580.021, subdiv. 2. At least one other provision of the foreclosure statutes requires service "in like manner as a summons in a civil action in the district court upon the person in possession of the mortgaged premises." *See, e.g.*, § 580.03. This language shows that, at least as applied to the foreclosure statutes, when the Minnesota Legislature intends to propound a service requirement, it will state so specifically. Because section 580.021 does not specifically require service, this Court declines to read a service requirement into the plain language of that statute.

Finally, the Sheriff's Certificate of sale is prima facie evidence that a foreclosing party met all legal requirements. § 580.19. Plaintiffs do not allege any facts plausibly rebutting the validity of the Sheriff's Certificate. The timing of the attempted service of the Counseling Notice is not sufficient to rebut the prima facie evidence provided by the Sheriff's Certificate because the Foreclosing Party is not required to serve the Counseling Notice.

Plaintiffs failed to allege any facts that are sufficient to state a plausible claim for relief. Therefore, the Court recommends dismissal of Count II.[10]

---

[9]     Plaintiffs' untimely Response expressly asserts that the foreclosing party "did not attempt service of the notice[] 'in a like manner as a summons in a civil action in district court' until November 12, 2011." (Pls.' Resp. at 13); *see also* (*Id*. at 14 (again quoting the "like manner as a summons in a civil action" language and stating that "[m]ail service was inadequate to comply with the foreclosure statute.").

[10]     Plaintiffs' argument would likely fail on future motions as well because Fannie Mae submitted a letter that suggests the Foreclosing Party provided the Counseling Notice by U.S. Mail on March 4, 2011. *See* (Burns Letter). In fact, during oral argument, Alexander seemed to concede that even if the March 4 letter had been sent, Alexander and his tenant resided there at the time. But the Court did not rely on or consider the March 4 letter in this R&R. *See BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003) ("There must be reliance by the district court on the matters outside the pleading before it can be said that a motion to dismiss has been converted into one for summary judgment." (internal citation omitted)); *Hayden v.*

### 3.    Claim III

Plaintiffs allege the Foreclosing Party failed to comply strictly with Minnesota Statutes in its postponement of the mortgage foreclosure sale. *See* (Compl. ¶¶ 30–38). Specifically, Plaintiffs allege the Foreclosing Party did not conduct the sale on December 29, 2011, and it was not lawfully continued. (Compl. ¶ 33). Plaintiffs state "[t]he Foreclosing Party only published the Notice of Postponement of Mortgage Foreclosure Sale once and did not serve the Plaintiffs with the Notice of Postponement of Mortgage Foreclosure Sale." (Compl. ¶ 35). Plaintiffs also allege the Foreclosing Party failed to comply strictly with its statutory remedy of foreclosure by advertisement because the Notice of Postponement of Mortgage Foreclosure Sale was published *after* the original sheriff's sale date. (Compl. ¶ 36). Fannie Mae argues Minnesota law does not require that the notice of postponement be published before the date of the original sheriff's sale and that notice must only be mailed to occupants, and Plaintiffs were not occupants. (Mem. at 12).

To postpone a sale, the mortgagee must take the following actions at its own expense:

> (1)    publish, only once, a notice of the postponement and the rescheduled date of the sale, if known, as soon as practicable, in the newspaper in which the notice under section 580.03 was published; and
>
> (2)    send by first class mail to the occupant, postmarked within three business days of the postponed sale, notice:
>
>     (i)    of the postponement; and
>
>     (ii)    if known, of the rescheduled date of the sale and the date on or before which the mortgagor must vacate the property if the sheriff's sale is not further postponed, the mortgage is not reinstated under section 580.30, the property is not redeemed under section 580.23, or the redemption period is not reduced under section 582.032. The notice must state

---

*Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (stating that "[w]here . . . the court simply refers to supplementary materials, but does not rely on them or use them as a basis for its decision, the 12(b)(6) motion is not converted into a motion for summary judgment.") (internal citations omitted).

> that the time to vacate the property is 11:59 p.m. on the
> specified date.

Minn. Stat. § 580.07, subdiv. 1(a). Plaintiffs' argument that the Foreclosing Party only published

the notice of postponement once is not persuasive because the statute only requires publication

once. *Id.* Plaintiffs' argument that the Foreclosing Party did not serve the Plaintiffs with notice

of the postponement misinterprets the statute's requirement. The statute only requires service on

Plaintiffs if they are occupants. As established, Plaintiffs were not occupying the Property as of

May 2, 2011, and therefore cannot argue that they were occupying it at the time the sale was

postponed. Because the Property was not occupied at the time of the postponement, the

Foreclosing Party was not required to send Plaintiffs notice of the postponement by first class

mail. *See id.* Finally, Plaintiffs provide no support for their claim that publishing the Notice of

the Postponement of Mortgage Foreclosure after the original sale date is improper. A plain

reading of section 580.07 requires only that the postponement be published "as soon as

practicable . . . ." *Id.* It does not require publication before the original sale. *Id.* No facts

supporting Plaintiff's contention that the Notice of Postponement was untimely are alleged.[11]

--------------------------------

[11]     If considered, Plaintiffs' untimely Responses would likewise result in dismissal of this
claim. In their Response, Plaintiffs allege that the statute is ambiguous. (Pls.' Resp. at 15). The
Court disagrees that the language is ambiguous, and it therefore must be given effect. *See
Brisbin v. Aurora Loan Servs., LLC*, 679 F.3d 748, 752 (8th Cir. 2012) (citing *Beardsley v.
Garcia*, 753 N.W. 2d 735, 737 (Minn. 2008)). Plaintiffs allege that when the Foreclosing Party
published its notice of postponement, the deadline had "long since expired" under Minnesota
law. (Pls.' Resp. at 16). Plaintiffs state that if a notice of postponement only needed to be
published as soon as practicable, "the Minnesota Legislature would not have used the term
'postponed' in the statute." (*Id.*) Plaintiffs also state that Minnesota case law does not support
Fannie Mae's contention that a notice of postponement can be "filed after the original sheriff's
sale date has lapsed." (*Id.*) In support, Plaintiffs cite *Sanborn v. Potter*, 29 N.W. 64 (1886) for
the proposition that that case involved invalidating a sheriff's certificate under similar
circumstances. In *Sanborn*, the court found that the notice of adjournment, which was published
six days after the date of the original sale, was not sufficient to authorize the sale of the property.
*Id.* at 65. Specifically, the court found that the notice of adjournment "standing alone" did not
meet the notice requirements. *Id.* Therefore, *Sanborn* does not address whether the adjourned

For these reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and the Court recommends dismissal.

### 4. Applicability to Fannie Mae

The Court finds that Plaintiffs' Claims I, II, and III fail to state claims upon which relief can be granted and recommends dismissal of these claims. This Court analyzed Plaintiffs' foreclosure-statute claims against the Foreclosing Party because it was the actor during the foreclosure process. The Foreclosing Party assigned its rights to Fannie Mae. *See* (Assignment of Sheriff's Certificate of Sale). Because Fannie Mae has no greater interest in the Property than the Foreclosing Party, Plaintiffs' claims against Fannie Mae fail on the merits for the same reasons.

### D. Claim V

Plaintiffs claim they are entitled to have the Property title quieted in their names because Plaintiffs and Fannie Mae each claim they have rights to the property. *See* (Compl. ¶¶ 46–51).

Minnesota Statutes section 559.01 provides:

> Any person in possession of real property personally or through the person's tenant, or any other person having or claiming title to vacant or unoccupied real property, may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the

---

notice published after the original sale was untimely.

Finally, Plaintiffs claim the Foreclosing Party "relinquished and abandoned any rights or remedies under section 580.07." (Pls.' Resp. at 17) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). *Olano* does not appear to apply to this case because it dealt with the limitations of appellate authority under the Federal Rules of Criminal Procedure. *Olano*, 507 U.S. at 741 (reversing the Court of Appeals because respondents did not meet their burden of showing prejudice under Rule 52(b) of the Federal Rules of Criminal Procedure).

Plaintiffs make much of the language requiring notice "within three business days[.]" (Suppl. Resp. at 12–13). The language of the statute requires three business days only if notice is to be sent to the occupant, and does not require notice to be sent three days *before* the scheduled sheriff's sale; it only requires notice to be sent *within* three business days. Minn. Stat. § 580.07, subdiv. 1(a).

purpose of determining such adverse claim and the rights of the parties, respectively.

Dismissal is appropriate under this statute where "the plaintiffs' pleadings, on their face, have not provided anything to support their claim that the defendants' adverse claims are invalid, other than labels and conclusions, based on speculation . . . ." *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013). Plaintiffs' quiet title claim appears to rest on the prior claims that the foreclosure is invalid.[12] As previously discussed, the Court finds Plaintiffs have not alleged sufficient facts that establish the Foreclosing Party failed to comply strictly with the foreclosure requirements. Therefore, the Plaintiffs have likewise not pleaded sufficient facts to support their quiet title claim, and this Court recommends dismissal of this claim.

### E.    Claim IV: Wrongful/Forcible Eviction

Plaintiffs claim Fannie Mae's agent entered the Property during the redemption period without lawful authority under Minnesota Statute sections 557.08 and 557.09, changed the locks, and "deprived Plaintiffs and their family of their safety and security of their [h]ome." (Compl. ¶¶ 39–45). Fannie Mae states dismissal is proper on this claim because its agent was statutorily authorized to enter the property to secure it under section 582.031. (Mem. at 13–14).

Section 582.031 permits a party that holds a sheriff's certificate to premises that are vacant or unoccupied to enter the premises "to protect the premises from waste and trespass, until the holder of the mortgage or sheriff's certificate receives notice that the premises are occupied." § 582.031, subdiv. 1(a). Installing or changing locks on doors and windows are authorized actions. § 582.031, subdiv. 2. Plaintiffs do not allege that they provided Fannie Mae, as the holder of the sheriff's certificate, with notice that the premises are occupied. The public

---

[12]    Plaintiffs' Response explicitly relies on Fannie Mae's failure to show the Foreclosing Party was in "exact compliance" with the foreclosure statute for its quiet title claim. *See* (Pls.' Resp. at 17–18).

record reflected that the property was vacant and unoccupied. Therefore, Fannie Mae's agent was permitted by statute to enter the premises and change the locks.

Plaintiffs fail to allege a claim upon which relief can be granted. This Court therefore recommends dismissal of this claim.

### F. Prejudice

Typically, a plaintiff is given notice and an opportunity to amend the complaint when the court dismisses a complaint under Rule 12(b)(6). *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938 (8th Cir. 2012). But where "it is patently obvious the plaintiff could not prevail based on the facts alleged in the complaint[,]" a court's failure to give the plaintiff "notice and an opportunity to respond . . . is not reversible error." *Id.* (quoting *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991)). The decision to grant leave to amend is within the district court's discretion. *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995).

The Court finds that Plaintiffs' claims are without legal basis, and allowing Plaintiffs leave to amend their Complaint would be futile. For this reason, the Court recommends Plaintiffs' claims be dismissed with prejudice. *See Labrant v. Mortg. Elec. Registration Sys., Inc.*, No. 11-cv-3029 (JRT/LIB), 870 F. Supp. 2d 671, 684 (D. Minn. 2012) (adopting report and recommendation that recommends dismissal of claims with prejudice on the same grounds); *Ikechi v. Verizon Wireless*, No. 10-cv-4554 (JNE/SER), 2011 WL 2118797, at *5 n.6 (Apr. 7, 2011) (stating that a court may "dismiss claims with prejudice if re-pleading would be futile[]").

### III. CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1. Defendant Federal National Mortgage Association's Motion to Dismiss [Doc. No. 13] be **GRANTED**.

2. Plaintiffs' Complaint (Compl., Ex. A., Attached to Notice of Removal) [Doc. No. 1] be **DISMISSED with prejudice**.

Date: June 21, 2013

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. L.R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 5, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.