# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| GEORGINA STEPHENS and LARRY ALEXANDER (*a married couple*),<br><br>                    Plaintiffs,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION, *a federally chartered corporation, all unknown successors, and all other persons Unknown claiming any right, title, interest, or lien in the real estate described in the complaint Herein and John Doe and Jane Doe,*<br><br>                    Defendant. | Civil No. 12-2453 (JRT/SER)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE** |

Georgina Stephens and Larry Alexander, Post Office Box 381873, Germantown, TN  38183, *pro se*.

Kendall L. Bader, **BARNES & THORNBURG LLP**, 225 South Sixth Street, Suite 2800, Minneapolis, MN  55402, for defendant.

Plaintiffs Georgina Stephens and Larry Alexander challenge the foreclosure of the property located at 224 North Avon Street, St. Paul, MN (the "Property").  The matter is before the Court on Defendant Federal National Mortgage Association's ("Fannie Mae") motion to dismiss.  On June 21, 2013, United States Magistrate Judge Steven E. Rau issued a Report and Recommendation ("R&R") recommending that the Court grant

Defendant's motion to dismiss and dismiss Plaintiffs' claims with prejudice. (Docket No. 33.) Plaintiffs made timely objections to the R&R. Having conducted a *de novo* review of those portions of the R&R to which Plaintiffs object, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), and having carefully reviewed the submitted materials, the Court overrules Plaintiffs' objections and adopts the R&R because it finds that the foreclosure on the Property was valid.

## BACKGROUND[1]

Plaintiffs owned the Property prior to foreclosure on it. (*See* Notice of Removal, Ex. B ("Compl.") ¶¶ 4-6, Sep. 24, 2012, Docket No. 1.) The parties dispute whether Plaintiffs occupied the Property at the time of the foreclosure in late 2011 and early 2012. In their Complaint, Plaintiffs allege that the Property "is [their] principal place of residence." (Compl. ¶ 4.) Fannie Mae, however, submits public records that demonstrate the Property was "res[idential], non-hstd [non-homestead]" land (Decl. of Kendall Bader, Ex. 3, Mar. 6, 2013, Docket No. 16)[2] at the time of the foreclosure and was unoccupied as a result of being condemned (*see, e.g.*, Bader Decl., Ex. 12).

*Public Records*

On April 29, 2011, the City of St. Paul (the "City") declared the Property unfit for human habitation and condemned it. (*See* Notice of Condemnation as Unfit for Human

---

[1] For purposes of addressing Plaintiffs' objection, only essential facts are included in this background section. For a more complete discussion, see R&R at 2-7.

[2] Each exhibit used by the Court from the Bader Declaration is also publically available. (*See also* R&R at 2-7.)

Habitation & Order to Vacate ("Condemnation Order"), City of St. Paul, Apr. 29, 2011.)[3] The Condemnation Order demanded vacation of the property by May 2, 2011. (*Id.*)

Alexander appealed the City's decision and appeared at a City Legislative Hearing on May 3, 2011. (Minutes – Final, Legislative Hearings, at 8-10, City of St. Paul, May 3, 2011.)[4] At that hearing, the Legislative Hearing Officer stated that she did "not trust that [the Property was] an owner-occupied unit," and ordered the property vacated no later than May 4, 2011. (*Id.* at 10.) The case was referred to the St. Paul City Council. (*Id.*)

Alexander appealed to the St. Paul City Council and on May 18, 2011, appeared at the City Council's public hearing. (*See* Minutes – Final, City Council at 18-19, May 18, 2011.)[5] The City Council adopted the Legislative Hearing Officer's recommendation and ordered immediate vacation of the Property. (*Id.* at 19.) Alexander informed the City Council that the property was "currently vacant." (*Id.*) City records show that the property has been vacant since May 6, 2011. (Bader Decl., Ex. 5 (Vacant Building List).)

Alexander filed suit in Ramsey County seeking damages against the City and attempting to overturn the Condemnation Order. (*See* Second Decl. of Kendall Bader, Ex. A (Findings of Fact, Conclusions of Law, Order Dismissing the Action at 10, *Alexander v. City of St. Paul*, No. 62-CV-11-5136 (Minn. Dist. Ct. Nov. 3, 2011)), Docket No. 27.) That court found that Alexander had vacated the Property by May 2,

---

[3] *Available at* http://stpaul.legistar.com/View.ashx?M=F&ID=1343342&GUID=BA9875BA-CADD-483F-BD65-95D181DC321B (last visited Sept. 16, 2013).

[4] *Available at* http://stpaul.legistar.com/View.ashx?M=M&ID=144833&GUID=5D92E23F-6C21-49F6-8344-F156B3F53D8B (last visited Sept. 16, 2013).

[5] *Available at* http://stpaul.legistar.com/View.ashx?M=M&ID=147181&GUID=BFF3DAA0-CDC5-41DD-9DCB-B06493E6E520 (last visited Sept. 16, 2013).

2011, and that the Property had remained legally unoccupied since that time. (*Id.* at 5, 7.) Alexander did not appeal this decision.

Beginning in May 2011, an inspector for the City, Matt Dornfeld, visited the Property to check for occupancy and repairs and documented his visits.[6] (*See* Bader Decl., Ex. 12.) Dornfeld noted that the house appeared illegally occupied at times during the summer of 2011 but that no one would answer the door despite his repeated knocks on multiple visits. (*Id.* at 3-4.). Dornfeld also observed repairs conducted to the roof without a permit during August 2011 (*id.* at 4) and recent painting of the house in the Fall of 2011 (*id.* at 5). On November 7, 2011, Dornfeld visited the Property and found that the house "appeared vacant." (Bader Decl., Ex. 12 at 5.) The same day, Dornfeld noted that Alexander left him "a VM [voicemail] stating 'house is vacant.'" (*Id.*) On his next visit to the Property on November 29, 2011, Dornfeld once again noted that the "[h]ouse appeared vacant." (*Id.*)

*Foreclosure Process*

On October 27, 2011, after Plaintiffs defaulted on their mortgage, the current assignee of the mortgage, CitiMortgage, Inc. ("CitiMortgage"), recorded its intent to foreclose on the Property. (Compl. ¶¶ 8-9; Bader Decl., Ex. 7 (Notice of Pendency).) Then, on November 12, 2011, CitiMortgage attempted to serve Plaintiffs with notice of the foreclosure sale, but the process server found the Property "vacant and unoccupied." (*See* Bader Decl., Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record) at 17.)

---

[6] According to Dornfeld's reports, he checked the house frequently between May 2011 and February 2013. (Bader Decl. Ex. 12 at 5-7.)

CitiMorgage initially scheduled the sheriff's sale of the property for December 29, 2011. (Compl. ¶ 32.) On January 5, 2012, after no sale had taken place, CitiMortgage filed a Notice of Postponement, setting January 23, 2012 as the revised date of the sheriff's sale. (*Id.* ¶ 34.) The sheriff's sale took place on January 23, 2012, and Fannie Mae, the winner of the auction, recorded the resulting Sheriff's Certificate of Sale with Ramsey County on January 26, 2012. (Compl. ¶ 12; Bader Decl., Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).)

*Procedural Posture*

In August 2012, Plaintiffs filed their *pro se* Complaint alleging that Fannie Mae had failed to comply with Minnesota Statutes requiring notice of sale, pre-foreclosure counseling notice, and notice of sale postponement. *See* Minn. Stat. §§ 580.03, 580.07, 580.021. Plaintiffs also bring claims for forcible eviction and quiet title. Fannie Mae timely filed a motion to dismiss. After a hearing, on May 21, 2013, the Magistrate Judge issued the R&R, recommending dismissal of all of Plaintiffs' claims. Plaintiffs timely objected[7] to the R&R, arguing that they had not received the notices they were entitled to

---

[7] Plaintiffs' objection contained more than 6,100 words, (*see* Def.'s Resp. to Pls.' Obj. at 5, July 12, 2013, Docket No. 35), nearly double the 3,500 word limit prescribed by Local Rule 72.2(c)(1). Although failure to comply with LR 72.2 is a sufficient basis to overrule Plaintiffs' objections, *see Blodgett v. Hanson*, Civ. No. 12-301, 2013 WL 1249221, at *4 (D. Minn. Mar. 26, 2013), the Court will address the merits of Plaintiffs' objections and overrule them on substantive grounds as well.

under the Minnesota Statutes and that they were forcibly evicted because the Property was not vacant at the time of eviction.[8]

## ANALYSIS

### I. STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Finally, Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

---

[8] Plaintiffs did not specifically object to the dismissal of Claim V (Quiet Title) (R&R at 18-19) or to the R&R's recommendation that their claims be dismissed with prejudice (*id.* at 20).

## II.     IMPROPER NOTICE

Plaintiffs object to the R&R's determination that they received sufficient notice regarding foreclosure of the Property. Minnesota foreclosure laws require that occupants of mortgaged property receive (1) notice of a sheriff's sale, Minn. Stat. § 580.03; (2) a pre-foreclosure counseling notice, Minn. Stat. § 580.021, subd. 2; and (3) notice by mail of any postponement of a sheriff's sale, Minn. Stat. § 580.07, subd. 1. Additionally, the Minnesota statute on postponement requires that the foreclosing party publish "notice of the postponement and the rescheduled date of the sale, if known, as soon as practicable." Minn. Stat. § 580.07, subd. 1.

The Plaintiffs object to the R&R's determination that, because Plaintiffs did not occupy the Property, Plaintiffs were not entitled to the statutory notices due to occupants. Plaintiffs also object to the R&R's conclusion that the published notice of postponement of sale required by Minnesota statute may be published after the date of the original sale. The Court will address each objection in turn.

### A.     Occupancy of the Property

Plaintiffs contend that they did not receive the notices that Minnesota foreclosure law requires must be provided to occupants. The R&R concluded that Plaintiffs were not entitled to these notices because Plaintiffs were not occupants at the time of foreclosure. Plaintiffs object to this conclusion, arguing that the Magistrate Judge gave improper weight to public records and to the Sheriff's Certificate of Sale in determining occupancy of the Property.

### 1.   Consideration of Public Records

Plaintiffs object to the R&R's reliance on public documents to conclude that the Property was unoccupied.  Plaintiffs argue that these documents should not be considered because they are inconsistent with their Complaint.  The Court may consider "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings" in the context of a Rule 12(b)(6) motion to dismiss.  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Although the Court "generally must ignore material outside the pleadings," it may consider "materials that are part of the public record **or** do not contradict the complaint." *Porous Media Corp.*, 186 F.3d at 1079 (internal quotation marks omitted) (emphasis added).  First, as in other foreclosure cases, "the notes, mortgages, assignments and other foreclosure-related documents . . . are necessarily embraced by the pleadings and most are public records." *Haubrich v. U.S. Bank Nat'l Ass'n*, Civ. No. 12-565, 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012).  The Sheriff's Certificate is part of the foreclosure record.  *See id.*  The Condemnation Order, vacant building designation, city legislative hearing minutes, city council minutes, and the vacant building monitoring log are part of the public record, and the Court may properly consider them in deciding Fannie Mae's motion to dismiss

Additionally, the materials do not contradict the Complaint because Plaintiffs did not plead that the Property was occupied at the time of the foreclosure.  Although

Plaintiffs allege that the "Property is the Plaintiffs' principal place of residence" (Compl. ¶ 4), Plaintiffs do not allege that they occupied the Property in late 2011 or early 2012. Nor do Plaintiffs plead any facts that would support such an allegation. *Cf. Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**2. Non-Occupancy**

Plaintiffs further object to the determination they did not occupy the Property in late 2011. Plaintiffs contend that Alexander's appeal of the May 3, 2011 Condemnation Order created a stay that rendered the City's subsequent orders to vacate the building a "legal nullity" (Pls.' Obj. at 2, July 3, 2013, Docket No. 34), and, in any case, repairs conducted in the summer of 2011 automatically "purged" the Condemnation Order (*id.* at 6). Plaintiffs argue that St. Paul city codes allowed them to lawfully "reoccup[y]" the Property, and that their assertions of occupancy cannot be questioned at this stage. (*Id.*)

First, as noted above, Plaintiffs did not allege in their Complaint that they occupied the Property in 2011. Moreover, the available public records all support a conclusion that the Property was unoccupied, including the minutes from the Legislative Hearing and the City Council and the City inspector's log. According to Minnesota law, actual occupancy is considered to mean "open, visible occupancy." *Pipkorn v. Dunn*, 408 N.W.2d 705, 707 (Minn. Ct. App. 1987) (quoting *Cutting v. Patterson*, 85 N.W. 172,

173 (Minn. 1901)). The Property, however, "appeared vacant" to the city inspector (*see* Bader Decl., Ex. 12 at 5) and CitiMortgage's process server.

Second, Plaintiffs present no legal authority to support their contention that appeal of the Condemnation Order created a stay, rendering that order null. Third, although Plaintiffs argue that City codes allowed them to lawfully "reoccup[y]" the Property, once a property is listed as a vacant building, the City requires that the home successfully complete a compliance inspection before reoccupation. (*See* Bader Decl., Ex. 11 (St. Paul Legislative Code § 34.23(8)).) No evidence of such an inspection exists on the public record, but the public record does contain evidence of the Property's vacant-building status, beginning May 6, 2011, including the City's detailed vacant building monitoring log. In November 2011, Alexander himself assured the City's property inspector that the house was vacant. Although Plaintiffs are correct that they do not need to provide evidence at the motion to dismiss stage, Plaintiffs' claims that the Condemnation Order created a stay and that they occupied the Property are not plausible based on the pleadings and public record. *See Whitney*, 700 F.3d at 1128 (8th Cir. 2012).

Finally, because only **occupants** must be given notice of a sheriff's sale, pre-foreclosure counseling, and notice of postponement, and Plaintiffs do not adequately allege occupancy, Plaintiffs do not adequately allege that Fannie Mae violated Minn. Stat. § 580.03; Minn. Stat. § 580.021, subd. 1; or Minn. Stat. § 580.07, by failing to personally provide Plaintiffs with these notices.

### 3. Sherriff's Certificate

Plaintiffs also object to the R&R's conclusion that the foreclosure sale of the Property was valid – and Plaintiffs received all of the notices required by law – because the Sheriff's Certificate serves as prima facie evidence of validity. Minnesota Statutes § 580.19 provides that a sheriff's certificate of sale is "prima facie evidence that all the requirements of law in that behalf have been complied with." (*See also* R&R at 15.) Once Fannie Mae recorded the Sheriff's Certificate, the foreclosure became presumptively valid. Minn. Stat. § 580.19. Nothing in the Plaintiffs' Complaint or the public record rebuts this prima facie evidence of validity. *See Bazil v. Wells Fargo Bank, N.A.*, Civ. No. 11-1206, 2011 WL 4442835, at *5 (D. Minn. Sept. 22, 2011) ("[S]peculation does not suffice to rebut this prima facie evidence."). Because Plaintiffs' lack of occupancy and the Sherriff's Certificate serve as alternate grounds for concluding Plaintiffs do not state a violation of Minn. Stat. § 580.03; Minn. Stat. § 580.021, subd. 1; or Minn. Stat. § 580.07, the Court will grant Fannie Mae's motion to dismiss Plaintiffs' claims that allege Fannie Mae failed to strictly comply with these statutes.

### B. Publication of Notice of Postponement

Plaintiffs also claim that they did not receive notification by publication as required by Minn. Stat. § 580.07 because the postponement of the Property's foreclosure was published after the date of the original sale. Plaintiffs object to the R&R's determination that Minn. Stat. § 580.07 allows notice of the postponement to be published after the original sale date. Plaintiffs contend the statute "required publication

of the notice of postponement **before** the 'proposed sale' date." (Pls.' Obj. at 8 (emphasis added).) But Plaintiffs' proposed interpretation of § 580.07 fails to consider both the text and the purpose of the statute.

First, the text of § 580.07 does not require publication before an initially planned sale is postponed; rather, the statute requires only that "notice of the postponement and the rescheduled date of the sale" must be published "as soon as practicable." Minn. Stat. § 580.07, subd. 1(a)(1). Second, as recognized by Minnesota courts, § 580.07 is intended to protect "person[s] interested in the sale of the property [who] ha[ve] in fact been misled by the change" of date of the sale and "misled to their prejudice." *Banning v. Armstrong*, 7 Minn. 46, 48 (1862) ("If a party publishes a notice of foreclosure, and does not proceed to sell under the same, he certainly has the right to publish a new notice and make sale under the latter."). Plaintiffs do not allege that they were prejudiced by the change of date of the sheriff's sale.[9] The Court concludes that because § 580.07 does not require publication before an initially planned sale is postponed, Plaintiffs fail to plead a violation of this statute. Consequently, the Court will dismiss Plaintiffs' claim that Fannie Mae failed to strictly comply with § 580.07.

---

[9] Plaintiffs allege that the statute requires publication of notice of postponement before the planned date of sale to assure that "no one need appear at a cancelled sheriff's sale." (Pls.' Obj. at 17.) But the type of prejudice contemplated by the statute is not that of an interested party who might unnecessarily attend a cancelled sale, but rather that of an interested party who might be unable to attend the actual sheriff's sale for lack of notice. *See Banning*, 7 Minn. at 48; *Dana v. Farrington*, 4 Minn. 433, 433 (1860) (holding a foreclosure sale void when an interested party was "misled to his prejudice" because he received no notice of the changed date of sale and consequently missed the revised sale). Plaintiffs do not allege that they did not know the new date of the sale or that they missed the January 23, 2012 sale.

### III.  FORCIBLE EVICTION CLAIM

Plaintiffs object to the Magistrate Judge's recommended dismissal of their claim of forcible eviction.  Plaintiffs base their objection on the grounds that (1) they purged the Condemnation Order by conducting repairs and (2) the Sheriff's Certificate is invalid.  As discussed *infra*, Fannie Mae possessed a valid sheriff's certificate.  This Sheriff's Certificate permitted Fannie Mae's agent to lawfully enter the premises "to protect the premises from waste and trespass, until the holder of the mortgage or sheriff's certificate receives notice that the premises are occupied."  Minn. Stat. § 582.031, subd. 1(a).  Because the Property appeared vacant and the public record showed the Property to be unoccupied, no forcible eviction occurred.  *See id.*  The Court will dismiss Plaintiffs' forcible eviction claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** the Plaintiffs' objections [Docket No. 34] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated June 21, 2013 [Docket No. 33]. Accordingly, **IT IS HEREBY ORDERED** that Federal National Mortgage Association's Motion to Dismiss [Docket No. 13] is **GRANTED**, and all claims against it are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  December 30, 2013               ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                                            United States District Judge